﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/20 Archive Date: 09/30/20

DOCKET NO. 191209-48488
DATE: September 30, 2020

ORDER

Entitlement to a rating in excess of 10 percent for post-operative left achilles tendon rupture with tendonitis is denied.

Entitlement to a rating in excess of 10 percent for temporomandibular joint dysfunction post-operative maxillofacial surgery is denied.

Entitlement to a rating in excess of 10 percent for osteoarthritis of the left knee with patellar chondromalacia is denied.

Entitlement to a compensable rating for surgical scars, left knee is denied.

Entitlement to a compensable rating for permanent flexion contracture of the left hand proximal interphalangeal (PIP) joint is denied.

Entitlement to a compensable rating for permanent flexion contracture of the right hand proximal interphalangeal (PIP) joint is denied.

Entitlement to service connection for a right thigh disorder is denied.

Entitlement to service connection for hypermetropia is denied.

REMAND

Entitlement to a compensable rating for post-operative left inguinal hernia is remanded.

Entitlement to service connection for degenerative arthritis of the bilateral feet is remanded.

FINDINGS OF FACT

1. The Veteran’s post-operative left achilles tendon rupture with tendonitis is manifested by no more than moderate limited motion of the ankle.

2. The Veteran’s temporomandibular joint dysfunction post-operative maxillofacial surgery is manifested by no worse than 30 to 34 mm of maximum unassisted vertical opening and 0-4 mm of lateral excursion bilaterally during flare-ups, without dietary restrictions to mechanically altered foods.

3. The Veteran’s osteoarthritis of the left knee with patellar chondromalacia is manifested by pain and full range of motion of flexion to 140 degrees and extension to 0 degrees, even during flare-ups and consideration of pain on motion; no ankylosis, subluxation, lateral instability, cartilage condition, limitation of flexion, limitation of extension, nonunion or malunion of the tibia or fibula, or genu recurvatum has been shown.

4. The Veteran’s surgical scars, left knee, are not painful or unstable.

5. The Veteran’s permanent flexion contracture of the left hand proximal interphalangeal (PIP) joint is not manifested by ankylosis or limitation of motion.

6. The Veteran’s permanent flexion contracture of the right hand proximal interphalangeal (PIP) joint is not manifested by ankylosis or limitation of motion.

7. The preponderance of the evidence of record is against finding that the Veteran has had a right thigh disability at any time during or approximate to the pendency of the claim.

8. Hypermetropia is not a disease or injury for VA compensation purposes.

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for post-operative left achilles tendon rupture with tendonitis have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5271.

2. The criteria for a rating in excess of 10 percent for temporomandibular joint dysfunction post-operative maxillofacial surgery have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.150, Diagnostic Code 9905.

3. The criteria for a rating in excess of 10 percent for osteoarthritis of the left knee with patellar chondromalacia have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5010 and 5256-5263.

4. The criteria for a compensable rating for surgical scars, left knee, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.118, Diagnostic Code 7805.

5. The criteria for a compensable rating for permanent flexion contracture of the left hand proximal interphalangeal (PIP) joint have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5227.

6. The criteria for a compensable rating for permanent flexion contracture of the right hand proximal interphalangeal (PIP) joint have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5227.

7. The criteria for service connection for a right thigh disorder have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

8. The criteria for service connection for hypermetropia have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 4.9.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from October 1989 to March 2011.

On appeal is a September 2019 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO).

In December 2019, the Veteran filed Form 10182 – Decision Review Request: Board Appeal (Notice of Disagreement), choosing to continue his appeal via Direct Review by a Veterans Law Judge under the AMA. As background on this new appeals process, on August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review.

Duty to Notify and Assist

The Veteran has not raised any issues with the duty to notify. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that “the Board’s obligation to read filings in a liberal manner does not require the Board... to search the record and address procedural arguments when the veteran fails to raise them before the Board”).

The Board also finds that the duty to assist requirements have been fulfilled. All relevant, identified, and available evidence has been obtained, and VA has notified the appellant of any evidence that could not be obtained. Also of record are VA examinations conducted in August 2019.

The Veteran has not referred to any additional, unobtained, relevant, available evidence. Thus, the Board finds that VA has satisfied the duty to assist. No further notice or assistance to the Veteran is required to fulfill VA’s duty to assist in development. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities. 38 C.F.R. Part 4 (2018). The Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.1 (2018).

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2018). Consideration of the whole recorded history is necessary so that a rating may accurately compensate the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the Veteran’s medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31 (1999).

1. Entitlement to a rating in excess of 10 percent for post-operative left achilles tendon rupture with tendonitis.

The Veteran’s service-connected left ankle disability has been rated pursuant to the criteria of Diagnostic Code 5271, as set forth in 38 C.F.R. § 4.71a. Under this diagnostic code, a moderate limitation of ankle motion warrants a 10 percent rating and a marked limitation warrants a 20 percent rating. The normal range of motion of the ankle is 20 degrees of dorsiflexion and 45 degrees of plantar flexion.

Other diagnostic codes relating to the ankle are Diagnostic Code 5270 (ankylosis of ankle); Diagnostic Code 5272 (ankylosis of the subastragalar or tarsal joint); Diagnostic Code 5273 (malunion of os calcis or astragalus); and Diagnostic Code 5274 (astragalectomy). As will be discussed in more detail below, a review of the VA examination and treatment records in the claims file do not demonstrate any of these conditions. Therefore, the application of these additional diagnostic codes is not warranted. 

When evaluating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating in cases in which the claimant experiences additional functional loss due to pain, weakness, excess fatigability, or incoordination, to include with repeated use during flare-ups, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995). The provisions of 38 C.F.R. §§ 4.40 and 4.45 are to be considered in conjunction with the diagnostic codes predicated on limitation of motion. See Johnson v. Brown, 9 Vet. App. 7 (1996).

Here, the Veteran contends he is entitled to a rating in excess of 10 percent for his service-connected post-operative left Achilles tendon rupture with tendonitis. After review of the relevant evidence in this case, the Board finds that a disability rating in excess of 10 percent is not warranted. 

The Veteran was afforded a VA examination in August 2019. The examiner noted a current diagnosis of post-operative repair left Achilles tendon rupture with tendonitis. The examiner noted the Veteran’s report that he experienced flare-ups of pain in the left ankle that are mild and last less than one day. On physical examination of the left ankle, the Veteran was found to have normal range of motion. Dorsiflexion was to 20 degrees and plantar flexion was to 45 degrees, even on repetitive motion testing and with repeated use over time The examiner specifically noted that the examination was being conducted during a flare-up of the Veteran’s left ankle pain. Pain was noted on examination but did not result in functional loss. The examiner stated there was no ankylosis, shin splints, stress fractures, malunion of calcaneus (os calcis), talus (astragalus) or talectomy (astragalectomy). Past surgical history was noted to include a 1992 repair of a left Achilles tendon rupture. Imaging studies were performed, and degenerative arthritis was documented in the left ankle. 

VA treatment records from the Washington VAMC are also associated with the Veteran’s claims file. In summary, these records reflect the Veteran complained of left ankle pain for which he has had ongoing treatment. For example, a February 2017 physical therapy note reflects the Veteran reported a left Achilles tendon repair; an increase in ankle pain in the last two years; and, an active lifestyle where he runs two miles in the morning and lifts in the evening. 

A review of the VA examination noted above, and the VA treatment records, establishes that the Veteran’s symptoms were similar in severity, frequency, and duration throughout the entire period at issue. See Vasquez-Claudio v Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). The evidence shows that the Veteran’s dorsiflexion was normal; plantar flexion was normal; and no ankylosis has been noted. As such, the Board finds that the Veteran’s left ankle disability has resulted in no more than moderate limitation of ankle motion.

The Board further finds that the Veteran’s left ankle disability has not approached the severity contemplated for a 20 percent rating at any point during the appeal period. The record during the appeal period is simply absent any evidence of marked limited ankle motion, even when considering flare-ups. On examination in August 2019, range of motion of the ankle was described as normal, even with consideration of the examination being conducted during a flare-up. Further, although pain was noted in the August 2019 examination, this did not rise to the level of marked limitation of motion. In fact, there is no evidence of record at that time or otherwise to suggest that the Veteran’s left ankle disability has been more than moderate at any point during the appeal period.

In sum, the evidence of record shows that a disability rating in excess of 10 percent is not warranted for the Veteran’s left ankle disability at any point during the appeal period. 38 C.F.R. § 4.71a, Diagnostic Code 5271. The claim must be denied.

2. Entitlement to a rating in excess of 10 percent for temporomandibular joint (TMJ) dysfunction post-operative maxillofacial surgery.

The Veteran’s service-connected TMJ dysfunction post-operative maxillofacial surgery has been rated pursuant to the criteria of Diagnostic Code 9905, as set forth in 38 C.F.R. § 4.150. Under this diagnostic code, an interincisal range of 0 to 10 mm of maximum unassisted vertical opening; with dietary restrictions to all mechanically altered foods warrants a 50 percent rating; without dietary restrictions to mechanically altered foods warrants a 40 percent rating. 

Interincisal range of 11 to 20 mm of maximum unassisted vertical opening: with dietary restrictions to all mechanically altered foods warrants a 40 percent rating; without dietary restrictions to mechanically altered foods warrants a 30 percent rating. 

Interincisal range of 21 to 29 mm of maximum unassisted vertical opening: with dietary restrictions to full liquid and pureed foods warrants a 40 percent rating; with dietary restrictions to soft and semi-solid foods warrants a 30 percent rating; without dietary restrictions to mechanically altered foods warrants a 20 percent rating. 

Interincisal range of 30 to 34 mm of maximum unassisted vertical opening: with dietary restrictions to full liquid and pureed foods warrants a 30 percent rating; with dietary restrictions to soft and semi-solid foods warrants a 20 percent rating; without dietary restrictions to mechanically altered foods warrants a 10 percent rating. 

Lateral excursion range of motion of 0 to 4 mm warrants a 10 percent rating.

Here, the Veteran contends he is entitled to a rating in excess of 10 percent for his service-connected TMJ dysfunction post-operative maxillofacial surgery.

After review of the relevant evidence in this case, the Board finds that a disability rating in excess of 10 percent is not warranted. 

The Veteran was afforded a VA examination in August 2019. The examiner noted the Veteran had a severe overbite, requiring both braces and surgery to correct; he now has recurring pain and clicking in both left and right TMJs. He also stated it is painful to chew a steak or anything requiring unusual chewing and that he has to stop in the middle of a meal to recover and finish what he is eating at least once a week. The examiner noted the Veteran also reported severe flare-ups of the left and right TMJ that occur daily and are precipitated by grinding teeth, clicking, popping and lock jaw when opening wide. Functional loss or functional impairment is described by the Veteran as grinding teeth, clicking, popping and lock jaw when opening wide; fatigue when eating; being unable to chew food; and, that the joint freezes and locks during meals. Upon examination, the examiner stated the interincisal distance is greater than 34mm, with a lateral excursion on the right greater than 4 mm and on the left of 0-4 mm, even when pain on motion and repetitive motion testing were conducted. Pain was noted on mouth opening and chewing that causes functional loss. Localized tenderness or pain on palpation of the joint or associated soft tissue was noted, as was moderate crepitus bilaterally. The examiner noted that the examination was not conducted during a flare-up but opined that additional limitation of motion would be to 30 to 34 mm of maximum unassisted vertical opening on flare-ups, with lateral excursion limited to 0-4 mm bilaterally during flares. The examiner also stated the Veteran does not require a mechanically altered foods diet.

A review of the VA examination noted above establishes that the Veteran’s symptoms were similar in severity, frequency, and duration throughout the entire period at issue. See Vasquez-Claudio v Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). The evidence shows that the Veteran’s TMJ dysfunction post-operative maxillofacial surgery is manifested by 30 to 34 mm of maximum unassisted vertical opening during flare-ups, and lateral excursion limited to 0-4 mm bilaterally during flare-ups, without dietary restrictions to mechanically altered foods. As such, the Board finds that the Veteran’s TMJ dysfunction post-operative maxillofacial surgery warrants a 10 percent rating. 

The Board further finds that the Veteran’s TMJ dysfunction post-operative maxillofacial surgery has not approached the severity contemplated for a 20 percent rating at any point during the appeal period. The record during the appeal period is simply absent any evidence of dietary restrictions soft and semi-solid foods. In fact, although he expressed pain with chewing, the Veteran made specific reference to eating steak during his August 2019 VA examination. There is simply no medical evidence of record to suggest that the Veteran’s TMJ dysfunction post-operative maxillofacial has required any dietary restrictions at any point during the appeal period. Further, even when considering additional limitation of motion during flare-ups, the August 2019 VA examiner estimated that the Veteran’s limitation of motion would be to no more than 30 to 34 mm of maximum unassisted vertical opening and lateral excursion limited to 0-4 mm bilaterally. These findings correspond most closely to the 10 percent rating currently assigned.

In sum, the evidence of record shows that a disability rating in excess of 10 percent is not warranted for the Veteran’s TMJ dysfunction post-operative maxillofacial at any point during the appeal period. 38 C.F.R. § 4.150, Diagnostic Code 9905. The claim must be denied.

3. Entitlement to a rating in excess of 10 percent for osteoarthritis of the left knee with patellar chondromalacia.

The Veteran’s service-connected osteoarthritis of the left knee with patellar chondromalacia has been rated pursuant to the criteria of Diagnostic Code 5010, as set forth in 38 C.F.R. § 4.71a.

Diagnostic Code 5010 directs that arthritis due to trauma be rated as degenerative arthritis under 38 C.F.R. § 4.71a, DC 5003. Under that code, degenerative arthritis established by x-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When, however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a 20 percent evaluation is assignable for involvement of 2 or more major joints or 2 or more minor joint groups with occasional incapacitating exacerbations. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a, DC 5003. 

Other diagnostic codes relating to the knee are Diagnostic Code 5256 (ankylosis of knee); Diagnostic Code 5257 (recurrent subluxation or lateral instability); Diagnostic Code 5258 (dislocated semi-lunar cartilage); Diagnostic Code 5259 (removal of semi lunar cartilage); Diagnostic Code 5260 (limitation of flexion); Diagnostic Code 5261 (limitation of extension); Diagnostic Code 5262 (impairment of the tibia or fibula); and, Diagnostic Code 5263 (genu recurvatum). As will be discussed in more detail below, a review of the VA examination and treatment records in the claims file do not demonstrate any of these conditions. Therefore, the application of these additional diagnostic codes is not warranted. 

When evaluating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating in cases in which the claimant experiences additional functional loss due to pain, weakness, excess fatigability, or incoordination, to include with repeated use during flare-ups, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995). The provisions of 38 C.F.R. §§ 4.40 and 4.45 are to be considered in conjunction with the diagnostic codes predicated on limitation of motion. See Johnson v. Brown, 9 Vet. App. 7 (1996).

Here, the Veteran contends he is entitled to a rating in excess of 10 percent for his service-connected osteoarthritis of the left knee with patellar chondromalacia.

After review of the relevant evidence in this case, the Board finds that a disability rating in excess of 10 percent is not warranted. 

The Veteran was afforded a VA examination in August 2019. The examiner noted a diagnosis of osteoarthritis of the left knee with patellar chondromalacia. The Veteran reported mild flare-ups with functional loss or functional impairment described as being unable to run, walk, or stand for prolonged periods of time without pain post aggravation. Upon examination, which was noted to be conducted during a flare-up, the examiner noted the Veteran’s left knee had normal range of motion as flexion was measured to 140 degrees and extension was measured to 0 degrees. Pain was noted on examination, and pain, weakness, fatigability or incoordination significantly limit functional ability with flare ups. The examiner found no ankylosis, no recurrent subluxation, and no instability on joint stability testing. The examiner also noted there was no recurrent patellar dislocation, “shin splints” (medial tibial stress syndrome), stress fractures, chronic exertional compartment syndrome, or any other tibial or fibular impairment. There was no meniscus (semilunar cartilage) condition. Surgical history includes a 1992 left ACL repair with residuals reported as pain on exertion. Imaging studies have been performed and degenerative arthritis has been documented.

VA treatment records from the Washington VAMC are associated with the Veteran’s claims file. In summary, these records reflect the Veteran has had ongoing treatment for left knee pain that included physical therapy. An October 2016 x-ray showed no evidence of fracture or dislocation and mild osteoarthritis of the knee joint. 

Upon review of the relevant evidence, the Board finds that a rating in excess of 10 percent is not warranted for the Veteran’s osteoarthritis of the left knee with patellar chondromalacia for the entire period on appeal. The evidence of record is clear that the Veteran’s osteoarthritis of the left knee with patellar chondromalacia has no additional residuals or symptomatology separate from pain. As such, 10 percent is the highest rating available under Diagnostic Code 5010.

The Board has also reviewed the other diagnostic codes that pertain to evaluation of knee disabilities to determine if any other diagnostic code is applicable to the Veteran’s left knee disability. Here, however, the Board concludes that no separate or higher ratings are warranted. In this case, a rating under Diagnostic Code 5256 is not warranted as the Veteran has not been shown to have ankylosis. A separate or higher rating under Diagnostic Code 5257 is not warranted as the Veteran has not reported or been shown to have recurrent subluxation or lateral instability. A separate or higher rating under Diagnostic Code 5258 is not warranted as the Veteran has not been shown to have dislocated semilunar cartilage with frequent episodes of locking, pain, and effusion into the joint. A separate or higher rating under Diagnostic Code 5259 is not warranted as the Veteran has not been shown to have removal of any semilunar cartilage. A separate or higher rating under Diagnostic Code 5260 is not warranted as the Veteran’s flexion in his left knee has been shown to be no worse than 140 degrees, even when pain on motion and during flare-ups is considered. A separate or higher rating under Diagnostic Code 5261 is not warranted as the Veteran’s extension in his left knee has been shown to be no worse than 0 degrees. A separate or higher rating under Diagnostic Code 5262 is not warranted as the Veteran has not been shown to have tibia or fibular impairment. Finally, a separate or higher rating under Diagnostic Code 5263 is not warranted as the Veteran has not been shown to have a diagnosis of genu recurvatum.

The Board has also considered the Veteran’s reported impairment of function and has considered additional limitation of motion due to pain. Even considering additional limitation of motion or function of the left knee due to pain or other symptoms such as weakness, fatigability, weakness, or incoordination (see 38 C.F.R. §§ 4.40, 4.45, 4.59, DeLuca), the evidence does not show that the left knee disability more nearly approximates the criteria for any higher rating for any period on appeal.

The Board has also considered the Veteran’s lay statements. While lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), in this case, such an opinion falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). To the extent that the Veteran contends that his left knee disability is more severe than evaluated, while he is competent to describe that he has knee pain, he is not competent to report that his pain is of sufficient severity to warrant a certain evaluation under VA’s rating criteria because such an opinion requires medical expertise which he does not possess. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). As a result, the Board finds the results of the VA examination to be more probative than the lay evidence, particularly the recent August 2019 VA examination, as discussed above.

In sum, the Board concludes that for the entire period on appeal, a rating in excess of 10 percent for the Veteran’s osteoarthritis of the left knee with patellar chondromalacia is not warranted at any point during the appeal period.

4. Entitlement to a compensable rating for surgical scars, left knee.

Scars are rated under 38 C.F.R. § 4.118, the schedule of ratings for disorders of the skin, under Diagnostic Codes 7800-7805. 

Diagnostic Code 7800 provides the rating criteria for burn scars of the head, face or neck. Diagnostic Code 7801 provides the rating criteria for burn scars or scars due to other causes, not of the head, face, or neck, which are deep and nonlinear. Diagnostic Code 7802 provides the rating criteria for burn scars or scars due to other causes, not of the head, face, or neck, which are superficial and nonlinear; with a 10 percent rating warranted for a total area of 144 square inches or greater. Diagnostic Code 7804 pertains to unstable or painful scars. Diagnostic Code 7805 pertains to other scars (including linear scars), and other effects of scars evaluated under Diagnostic Codes 7800, 7801, 7802, and 7804. It also directs the adjudicator to evaluate any disabling effects not considered in a rating provided under Diagnostic Codes 7800-7804 under an appropriate diagnostic code.

Here, the Veteran’s service-connected surgical scars, left knee, have been rated pursuant to the criteria of Diagnostic Code 7805. The Veteran contends he is entitled to a compensable rating for his surgical scars, left knee.

After review of the relevant evidence in this case, the Board finds that a compensable disability rating for his service-connected surgical scars, left knee, is not warranted. 

The Veteran was afforded a VA examination in August 2019. The examiner noted the Veteran had two surgical scars due to left knee surgery. Upon examination, the examiner stated the scars on the Veteran’s left lower extremity were healed, not painful, not unstable, and measured 0.5cm x 0.5 cm. The examiner stated the scars do not result in limitation of motion, and there are no other pertinent physical findings.

The evidence of record, in particular the VA examination noted above, shows the Veteran’s surgical scars, left knee, are not burn scars of the head, face or neck. Thus, Diagnostic Code 7800 is not applicable. The scars are not deep and nonlinear; thus, Diagnostic Code 7801 is not applicable. The scars are not superficial and nonlinear or covering a total area of 144 square inches or greater; thus, Diagnostic Code 7802 is not applicable. Finally, the scars are not unstable or painful; thus, Diagnostic Code 7804 is not applicable. Accordingly, the Board finds that the evidence does not establish that the Veteran meets the criteria for a compensable disability rating under Diagnostic Codes 7800, 7801, 7802, or 7804, and an increased rating is therefore not warranted under those diagnostic codes. In addition, the evidence does not show the Veteran’s scars on his left knee have any disabling effects that are not considered under Diagnostic Codes 7800-7804 that are to be considered under another appropriate Diagnostic Code. 

As there are no symptoms of the Veteran’s left knee scars to support a higher rating under Diagnostic Codes 7800 through 7805, the Board concludes that a compensable rating for the left knee scars is not warranted, and the claim is denied.

5. Entitlement to a compensable rating for permanent flexion contracture of the left hand proximal interphalangeal (PIP) joint.

6. Entitlement to a compensable rating for permanent flexion contracture of the right hand proximal interphalangeal (PIP) joint.

The Veteran’s service-connected permanent flexion contractures of the left hand PIP joint and right hand PIP joint have been rated pursuant to the criteria of Diagnostic Code 5227, as set forth in 38 C.F.R. § 4.71a. 

Under Diagnostic Code 5227, ankylosis of the ring or little finger, a maximum noncompensable rating is assigned for unfavorable or favorable ankylosis of the ring or little finger regardless whether the finger is on the major (dominant) or minor (non-dominant) hand. 38 C.F.R. § 4.71a, DC 5227. A note accompanying Diagnostic Code 5227 provides that the Board should also consider whether evaluation as amputation is warranted and whether an additional evaluation is warranted for resulting limitation of motion of other digits or interference with overall function of the hand. 38 C.F.R. § 4.71a, DC 5227, Note. 

Here, the Veteran contends he is entitled to compensable ratings for his permanent flexion contractures of the left hand PIP joint and right hand PIP joint.

After review of the relevant evidence in this case, the Board finds that compensable disability ratings for his service-connected permanent flexion contracture of the left hand PIP joint and permanent flexion contracture of the right hand PIP joint are not warranted. 

The Veteran was afforded a VA examination of his hand and finger conditions in August 2019. The examiner noted a diagnosis of permanent flexion contracture of the right hand PIP joint, and the same diagnosis was given for his left hand. It was also noted the Veteran’s right hand is his dominant hand. 

Upon examination of the right hand, the examiner stated there was abnormal range of motion in that the little finger’s flexion was to 45 degrees; pain was noted on exam and causes functional loss; there was evidence of pain with use of the hand; there was no gap between pad of thumb and fingers; there was no gap between finger and proximal transverse crease of the hand on maximal finger flexion; and, there was no ankylosis. On observed repetitive use testing, there was no additional functional loss. Lastly, the examiner noted there were no additional factors that contributed to the disability and no functional impairment of the finger such that no effective function remains other than that which would be equally well served by an amputation.

Upon examination of the left hand, the examiner stated there was abnormal range of motion in that the little finger’s flexion was to 45 degrees; pain was noted on exam and causes functional loss; there was no evidence of pain with use of the hand; no gap between pad of thumb and fingers; no gap between finger and proximal transverse crease of the hand on maximal finger flexion; and, there was no ankylosis. On observed repetitive use testing, there was no additional functional loss. Lastly, the examiner noted there were no additional factors that contributed to the disability and no functional impairment of the finger such that no effective function remains other than that which would be equally well served by an amputation.

The examiner noted that the Veteran reported flare-ups twice per month that are mild and last less than a day. The examiner concluded her written report by stating imaging studies of the hands have been performed and there are no abnormal findings.

After review of the relevant evidence in this case, the Board finds that compensable disability ratings for the Veteran’s service-connected permanent flexion contracture of the left hand PIP joint and the right hand PIP joint are not warranted.

In this regard, the evidence shows that the Veteran’s permanent flexion contracture of the left hand PIP joint and the right hand PIP joint have been manifested by pain and some restricted motion. However, there has been no finding of ankylosis of the ring or little finger on either the right or left hand. As such, the Veteran has been properly assigned a noncompensable rating for his symptoms. See 38 C.F.R. § 4.71a, DC 5227. This is the maximum rating available under Diagnostic Code 5227.

The Board also notes that as the noncompensable rating assigned is the highest schedular rating for limitation of motion of the ring or little finger, the regulatory provisions (38 C.F.R. §§ 4.40, 4.45) pertaining to functional loss are not for application. Spencer v. West, 13 Vet. App. 376, 382 (2000); Johnston v. Brown, 10 Vet. App. 80, 85 (1997); see also Sharp v. Shulkin, 29 Vet. App. 26 (2017). 

Since the Veteran is in receipt of the maximum disability rating available under Diagnostic Code 5227, the Board has considered other potentially applicable Diagnostic Codes. As stated above, the Note following Diagnostic Code 5227 instructs the rater to consider whether evaluation as amputation is warranted. However, a rating for amputation of the little finger is not warranted for the right or left hand. To this end, the evidence does not show functional impairment of the extremity such that no effective function remains other than that which would be equally well served by an amputation with prosthesis. 38 C.F.R. § 4.71a, DC 5156. Rather, the VA examiner specifically found the functional impairment of the Veteran’s little finger not to rise to the level of amputation for both his right and left hand. Therefore, a rating based on amputation is not warranted.

The Note following Diagnostic Code 5227 also states that an additional evaluation is warranted for any resulting limitation of motion of other digits or interference with the overall function of the hand due to the service-connected residuals of right little finger fracture. At the outset, the Board observes that a noncompensable rating is the maximum rating based on limitation of motion of the ring or little finger. See 38 C.F.R. § 4.71a, DC 5230. Notwithstanding, as detailed herein, during the August 2019 VA examination, the Veteran reported pain on examination, and range of motion was indeed limited. However, there was no gap between the pad of the thumb and the fingers or between the finger and proximal transverse crease of the hand on maximal finger flexion for both the right and left hand. As such, there is no indication that any range of motion limitations of the other digits are attributable to the little finger of both the right and left hand. Thus, an additional evaluation is not warranted based on limitation of motion of other digits. 38 C.F.R. § 4.71a, DCs 5228 - 5230.

The Board observes that 38 C.F.R. § 4.59 and Burton v. Shinseki, 25 Vet. App. 1 (2011) provide that painful, unstable, or malaligned joints, due to healed injury, are entitled to at least the minimum compensable rating for the joint. However, there is no compensable minimum rating available under Diagnostic Codes 5227 or 5230. In Sowers v. McDonald, the Court held that 38 C.F.R. § 4.59 is not an independent provision that may be applied without an underlying Diagnostic Code. Sowers v. McDonald, 27 Vet. App. 472 (2016). Because Diagnostic Codes 5227 and 5230 for limitation of motion of the little finger provide for a maximum noncompensable rating, a compensable rating is not available under those diagnostic codes due to the provisions of 38 C.F.R. § 4.59.

In sum, throughout the appeal period, the Veteran’s level of disability has most nearly approximated that contemplated by his current evaluations. As the preponderance of the evidence is against the claims, the doctrine of the benefit of the doubt is not applicable, and the claims of entitlement to a compensable rating for permanent flexion contracture of the left hand PIP joint, and permanent flexion contracture of the right hand PIP joint, are denied.

Service Connection

To prevail on a direct service connection claim, there must be competent evidence of (1) a current disability, (2) in-service incurrence or aggravation of a disease or injury, and (3) a nexus between the in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a).

7. Entitlement to service connection for a right thigh disorder.

Here, the Veteran contends that he is entitled to service connection for a right thigh disorder. The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

As there is no competent evidence of a current diagnosis of a right thigh disorder, the Board concludes that the preponderance of the evidence is against granting service connection for this claim. 

Here, post service VA treatment records from the Washington VAMC are associated with the Veteran’s claim file. These records reflect the Veteran has had no complaints, diagnosis, or treatment specifically for a right thigh disorder. 

Upon review of the record, there is simply no medical evidence in the record to document a current diagnosis of a right thigh disorder. The Board acknowledges the Veteran’s report of right thigh pain. However, in order to warrant service connection, the threshold requirement is competent evidence of the existence of the claimed disability at some point during a Veteran’s appeal. See McClain v. Nicholson, 21 Vet. App. 319 (2007) (requirement that a current disability be present is satisfied “when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim... even though the disability resolves prior to the Secretary’s adjudication of the claim”); Degmetich v. Brown, 104 F.3d 1328 (1997); Brammer v. Derwinski, 3 Vet. App. 223 (1992). 

In this case, while the Veteran is competent as a layperson to testify to symptoms he experiences, such as right thigh pain, he has not demonstrated that he has the necessary skills, experience, or medical knowledge to diagnose a right thigh disorder; this is a complex medical question. Consequently, the Board concludes that the Veteran’s statements and opinions as to diagnosis and etiology are of little probative value. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (explaining in footnote 4 that a Veteran is competent to provide a diagnosis of a simple condition such as a broken leg, but not competent to provide evidence as to more complex medical questions). 

The Board also notes the Court of Appeals for the Federal Circuit recently found that pain alone can constitute a disability under 38 U.S.C. § 1110, because pain can cause functional impairment. Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018). However, even in light of Saunders, the Board finds that the Veteran does not have a current right thigh disorder as the VA treatment records do not indicate the Veteran’s claimed right thigh disorder has caused functional impairment.

Because the competent evidence of record does not establish that the Veteran has a current diagnosis of a right thigh disorder, the claim must be denied.

8. Entitlement to service connection for hypermetropia.

The Veteran contends that he has hypermetropia that was diagnosed during his active service. 

Upon review of the record, the Board acknowledges that the Veteran was indeed diagnosed with hypermetropia (a refractive error of the eye) during his active service. Service treatment records dated in July 2008 and May 2009 reflect a diagnosis of hypermetropia. However, the Board finds that it cannot grant service connection for this condition, as service connection for hypermetropia is precluded as a matter of law. 

For purposes of Veterans’ benefits, hypermetropia (a refractive error of the eye) is considered a congenital or developmental defect and is therefore not considered a “disease or injury” under the applicable legislation. 38 C.F.R. § 4.9. As such, hypermetropia does not constitute a disability for VA compensation purposes. 38 C.F.R. §§ 3.303, 4.9, 4.127; see also Winn v. Brown, 8 Vet. App. 510, 516 (1996). Service connection is warranted only if there is evidence of additional disability due to aggravation during service of the congenital defect by superimposed disease or injury. See VAOPGCPREC 82-90; Monroe v. Brown, 4 Vet. App. 513, 514-15 (1993); Carpenter v. Brown, 8 Vet. App. 240, 245 (1995); VAOPGCPREC 67-90; and VAOPGCPREC 11-99.

Upon review of the evidence of record, however, the Board finds no such aggravation during service of hypermetropia. 

The Veteran underwent a VA examination in January 2011, prior to discharge from service. As it relates to his eyes, the Veteran noted complaints of a bilateral eye stye, with no reference made to hypermetropia, or aggravation thereof by service. The Veteran’s symptoms started in 1998 when he experienced a classic stye in his left eye that responded to several days or warm compresses. The examiner noted that the Veteran had not experienced reoccurrence of a stye since 2006.

The Veteran underwent a VA examination for eye conditions in August 2019. The examiner only noted a diagnosis of bilateral arcus senilis and made no reference to hypermetropia, or aggravation thereof by service. 

With no evidence of aggravation of the hypermetropia diagnosed in service, the Board finds that it cannot grant service connection for this condition, as service connection for hypermetropia is precluded as a matter of law as it is not a disability for VA compensation purposes. The claim is denied.

REASONS FOR REMAND

1. Entitlement to a compensable rating for post-operative left inguinal hernia is remanded.

The issue of entitlement to a compensable rating for post-operative left inguinal hernia is remanded to correct a duty to assist error that occurred prior to the rating decision on appeal.

The Veteran last underwent a VA examination for his service-connected post-operative left inguinal hernia in July 2015. However, prior to the September 2019 rating decision on appeal here, there was evidence that the Veteran’s post-operative left inguinal hernia symptoms had worsened since the July 2015 VA examination. Accordingly, the Board finds that an updated VA examination is necessary to correct a pre-decisional duty to assist error. See Snuffer v. Gober, 10 Vet. App. 400 (1997) (noting that a claimant is entitled to a new VA examination where there is evidence that the condition has worsened since that last examination); Green v. Derwinski, 1 Vet. App. 121, 124 (1991) (VA has a duty to provide the Veteran with a thorough and contemporaneous medical examination); Caffrey v. Brown, 6 Vet. App. 377, 381 (1994) (an examination too remote for rating purposes cannot be considered contemporaneous ).

2. Entitlement to service connection for degenerative arthritis, bilateral feet, (claimed as left foot pain) is remanded.

The Veteran reported for a VA foot examination in August 2019. However, the examination was inadequate at addressing whether the Veteran’s degenerative arthritis, bilateral feet, was at least as likely as not incurred in or caused by an in-service injury, event or illness. In so finding, the Board notes first that the examiner provided a medical opinion for the left foot only. However, an opinion is needed for both feet given the diagnosis of a bilateral foot disability. Also, the examiner’s opinion was unclear whether the referenced heel pain was related to the Veteran’s degenerative arthritis or his post-operative left achilles tendon rupture with tendonitis, which is separately service connected. As such, the Board finds that it was a pre-decisional duty to assist error to fail to ensure that the VA examination addressed the Veteran’s contentions and will thus remand to correct this error. 

The matter is REMANDED for the following action:

1. Schedule the Veteran for a VA examination or telehealth interview to determine the current nature and severity of his service-connected post-operative left inguinal hernia. The entire claims file must be made available to and reviewed by the examiner. Any indicated evaluations, studies, and tests should be conducted.

The examiner should describe all symptoms associated with the Veteran’s service-connected post-operative left inguinal hernia, as well as the severity of each symptom. The examiner should also address the functional effects that the Veteran’s post-operative left inguinal hernia has on his activities of daily living, to include employment.

In addressing such inquiries, the examiner should take into consideration all of the evidence of record, to include medical records as well as the Veteran’s lay statements, accepted medical principles, and objective medical findings. All examination findings, along with a complete rationale for all opinions, must be provided.

2. Obtain an addendum opinion from a qualified medical professional to determine the current diagnosis and etiology of the Veteran’s degenerative arthritis, bilateral feet. The entire claims file, including this remand, must be made available to the examiner. (The need for further in-person examination is left to the discretion of the examiner.)

The examiner must offer an opinion as to whether it is at least as likely as not that the Veteran’s degenerative arthritis of the bilateral feet:

• Began in service, within one year of service separation, or is otherwise related to his active duty service; 

• Was caused by his service-connected post-operative left achilles tendon rupture with tendonitis; or

• Has been aggravated by his service-connected post-operative left achilles tendon rupture with tendonitis.

In rendering a decision, the examiner must specifically comment on the Veteran’s lay statements, as well as his in-service complaints of left heel pain. The medical reasons for accepting or rejecting the Veteran’s statements must be set forth in detail. A complete rationale must be given for all opinions expressed.

 

 

Caroline Fleming

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T. Jiggetts, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.